IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 1 4 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

| | |
|---|---|
| ANTHONY E. RAMEY, | ) |
| Plaintiff, | ) Civil Action No. 7:06CV080 |
| v. | ) |
| | ) By: Michael F. Urbanski |
| JO ANNE B. BARNHART, | ) United States Magistrate Judge |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Anthony E. Ramey ("Ramey") brought this action pursuant to 42 U.S.C. § 405(g) for review of the decision of the Commissioner of Social Security denying Ramey's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383(f) ("Act"). The parties have consented to the undersigned Magistrate Judge's jurisdiction over this matter, and the case is before the court on cross motions for summary judgment. Having reviewed the record and after briefing and oral argument, the court finds that there is substantial evidence to support the Commissioner's decision. As such, the Commissioner's motion for summary judgment must be granted and this appeal dismissed.

I.

Ramey was born on May 18, 1966, and completed the eleventh grade. (Administrative Record [hereinafter R.] at 73, 84) Ramey's previous work includes that of a short order cook, forklift driver, dishwasher, and packer/sorter. (R. 79) In 1984, Ramey sustained an injury in an

industrial accident that resulted in the amputation of his thumb and the two middle fingers of his right hand. (R. 236) Despite these amputations, Ramey was able to continue working as a packer and sorter, dishwasher, cook, and forklift driver. (R. 79) Ramey filed an application for SSI with a protective filing date of January 13, 2004, alleging that he became disabled on January 1, 2002, due to constant pain and an inability to grip, both stemming from the missing fingers on his right hand. (R. 16, 73, 78) Ramey's claims were denied at both the initial and reconsideration levels of administrative review, (R. 28, 29), and a hearing was held before an administrative law judge ("ALJ") on July 20, 2005. (R. 41, 228-259) On October 24, 2005, the ALJ issued a decision denying Ramey's claims for SSI, finding that Ramey was not disabled within the meaning of the Act because he retained the residual functional capacity ("RFC") to perform a significant range of light work. (R. 13-25)

The ALJ's decision became final for the purposes of judicial review under 42 U.S.C. § 405(g) on January 13, 2006, when the Appeals Council denied Ramey's request for review. (R. 5-11) Ramey then filed this action challenging the Commissioner's decision.

## II.

Ramey requests that the decision of the Commissioner be reversed or, in the alternative, remanded. (Mem. Supp. Pl. at 14) Ramey contends that the ALJ failed to give controlling weight to his treating physician's opinion that Ramey would likely miss three or more days of work per month due to his right hand impairments. (Mem. Supp. Pl. at 9, 14) Ramey also argues that the ALJ erred by finding that he could return to his past relevant work as a packer/sorter and/or a short order cook. (Mem. Supp. Pl. at 24) Finally, Ramey claims that the ALJ erred in determining that he could perform light exertional work such as security monitor, counter supply

worker, and retail store bagger. (Mem. Supp. Pl. at 9) He specifically points to the lack of Vocational Expert ("VE") testimony regarding the two latter jobs and suggests that the job of security monitor does not actually exist in the national economy. (Mem. Supp. Pl. at 11)

The Commissioner contends that substantial evidence supports the ALJ's determination that Ramey was not disabled. (Def.'s Summ. J. at 2) The Commissioner claims that the record establishes Ramey retains the RFC to perform his past work or other light work and, thus, is not disabled. (Def.'s Summ. J. at 10-13) Additionally, the Commissioner argues that the ALJ's determination that Ramey could perform his past relevant work and a significant range of light work is supported by VE testimony. (Def.'s Summ. J. at 10-12) Finally, the Commissioner contends that Ramey's credibility problems regarding the severity and extent of his discomfort give further weight to the ALJ's findings. (Def.'s Summ. J. at 11)

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that Ramey failed to meet the conditions for entitlement established by and pursuant to the Act. See 42 U.S.C.A. § 405(g). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Stated briefly, substantial evidence is such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).

### III.

Ramey's contention that the ALJ failed to give controlling weight to the opinion of his treating physician, Dr. Torre, is not supported by the record. The opinion of a claimant's treating

Case 7:06-cv-00080-mfu Document 17 Filed 12/14/06 Page 3 of 10 Pageid#: 77

physician is entitled to great weight and may be disregarded only if there is persuasive contradictory evidence. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). If a treating physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

In a July 15, 2005 assessment regarding Ramey's ability to do work-related activities, Dr. Torre anticipated that Ramey's impairments would cause him to be absent from work more than three times per month. (R. 208) The ALJ directly addressed this portion of Dr. Torre's opinion and summarily rejected it, finding that the evidence showed that Ramey was able "to perform a wide variety of daily activities and maintain a productive lifestyle." (R. 21) The ALJ noted that Ramey cared for his children, bathed and dressed himself, walked to the store, wrote with his left hand, and used public transportation. (R. 21) The ALJ stated that Dr. Torre's opinion implied that Ramey was unable to sustain work activities in an ordinary work setting on a regular and continuing basis, but the ALJ opined that the record as a whole established that Ramey could perform gainful employment at least to a light level of exertion. (R. 21) The ALJ thus determined that Dr. Torre's opinion regarding Ramey's potential absenteeism was not well-supported by the total evidence of the record and would not be given controlling weight. (R. 21)

It was not improper for the ALJ to disregard Dr. Torre's opinion that Ramey would be absent from work more than three times per month. The court finds substantial evidence in the record to support the ALJ's determination. Ramey reported in his Daily Activities Questionnaire that he prepared his own meals, cleaned, and shopped for groceries. (R. 96-97, 120-121) He also reported that his two children, ages ten and eleven, were dependant upon him for support

4

and he typically made sure that they were ready for school everyday. (R. 95, 98) The evidence that Ramey was able to perform a wide variety of daily activities supports the ALJ's determination that Ramey was also able to sustain work activities in an ordinary work setting and would most likely not need to be absent from work more than three times per month. The ALJ determined that Dr. Torre's conclusion was inconsistent with the evidence of Ramey's demonstrated abilities, and substantial evidence supports that finding.

## IV.

Furthermore, the court finds substantial evidence in the record to support the ALJ's determination that Ramey retained the RFC for a limited range of light exertional work.[1] In June and September 2004, state agency vocational consultants determined that Ramey could perform work as a cleaner and polisher, office helper, security guard, ticket taker, sales attendant, and paper bag press operator. (R. 102, 110) The ALJ also determined that Ramey could perform a significant range of light work including jobs as a security monitor, counter supply worker, and retail store bagger.[2] (R. 24)

---

[1] Ramey's contention that the ALJ erred by finding that he could return to his past relevant work as a packer/sorter and/or a short order cook is supported by the record. The VE unequivocally stated that he would not recommend placing someone with Ramey's limitations in any of Ramey's previous jobs. (R. 252) The VE's determination was based on the fact that all of Ramey's past employment required frequent, occasional, or constant reaching, handling, and fingering, and Ramey's right hand disabilities precluded him from performing those functions. However, the ALJ's determination is harmless error because the court finds substantial evidence to support the ALJ's conclusion that Ramey still retained the RFC to do other light exertional work.

[2] The VE testified at the July 20, 2005 disability hearing that Ramey could perform work as a security monitor (number 379.367-010) cited in the Dictionary of Occupational Titles ("DOT"). (R. 23, 246) There is no testimony from the VE specifically regarding the jobs of counter supply worker and retail store bagger. Regardless, the court finds that the Commissioner has met her burden to show that there are still jobs, specifically that of a security system monitor,

Ramey claims that the "unbearable pain" in his right hand currently prevents him from obtaining gainful employment. (R. 238) In weighing a claimant's complaints of pain, the ALJ must first determine, through an examination of the objective medical record, whether the claimant has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. Craig, 76 F.3d at 592-93. Then, the ALJ must determine whether the claimant's statements about his symptoms are credible in light of the entire record. Id.

Dr. Torre indicated in his July 15, 2005 opinion that, despite Ramey's claim that he needs to lie down two to three times per day due to pain in his hand, alternating postures or lying down during an eight hour workday are not medically indicated in Ramey's case. (R. 203, 204) Dr. Torre agreed that the significant arthritis in Ramey's index MCP joint most likely caused Ramey pain, but once Dr. Torre removed, replaced, and repaired this joint, he determined that Ramey was doing well. (R. 227) Dr. Torre indicated in April 2004 and November 2005 that there was most likely a "behavioral component" to Ramey's claims of constant pain because, "objectively, he [was] doing extremely well." (R. 176, 227) Dr. Torre confirmed that Ramey had no significant ongoing objective pathology to warrant pain medication. (R. 227) Additionally, Ramey's treating therapist opined that Ramey's "rating of discomfort appear[ed] out of proportion to [the] diagnosis." (R. 190-191)

The court also notes that Ramey worked at various jobs, post injury, over a span of nearly twenty years and the medical evidence does not reveal any change that has recently occurred to fundamentally alter the nature of his disability. (R. 79, 87-91) The VE confirmed that the loss of

---

existing in significant numbers in the national economy that Ramey can perform, consistent with his RFC, age, education, and work experience. The VE testified that there were 114,660 jobs as a security system monitor in the Mid-Atlantic region. (R. 253)

a once-dominant hand does not necessarily preclude a person from working. (R. 255-256) Ramey himself admits that he has no medical problems with his left hand and that he has learned to use his left hand to perform most activities. (R. 119, 240) Dr. Torre confirmed that Ramey has no limitations in his ability to use his left hand in reaching, handling, fingering, and lifting on level ground. (R. 202, 205) Further, Ramey alleges no other physical impairments which would limit his ability to work.

Based on the evidence, the court agrees with the ALJ that Ramey's "assertions of debilitating pain are not consistent with the evidence of record. The evidence shows that the claimant has some level of pain; but the medical record shows that this pain and discomfort does not preclude him from performing work at least to the light level." (R. 20) For all of the above reasons, the court finds that there is substantial evidence to support the ALJ's determination that Ramey retained the RFC for a limited range of light exertional work.

## V.

Finally, Ramey's allegation that the job of security monitor does not truly exist in the national economy is not supported by the record. Ramey argues that the DOT is outdated because the security system monitor job has a specific vocational preparation ("SVP") of only two (2).[3] (Mem. Supp. Pl. at 11) Ramey claims that the position of a gaming surveillance officer (DOT 343.367-010) with an SVP of seven (7), most closely resembles the position described at the ALJ hearing. (Mem. Supp. Pl. at 12) Thus, because Ramey does not have the training to

---

[3]The SVP rating for each job is used to determine the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the skills needed for average performance in a specific job-worker situation. Dictionary of Occupational Titles app. C (4th ed. 1991).

7

perform at a skill level over three (3), he would not be able to perform the job of security system monitor. (Mem. Supp. Pl. at 13) Further, Ramey offers the VE's testimony that he had "[n]ever placed anyone" in that type of job as support for his contention that the security system monitor job is not available. (R. 254)

The court is not required to accept Ramey's contentions regarding the accuracy of the job descriptions maintained in the DOT and/or the availability of jobs in the marketplace. Ramey offers nothing other than speculation to support his allegation that the DOT is outdated and the position of security monitor, as described in the DOT, no longer exists. The fact that the VE testified that Ramey could work at a job recognized by the DOT and which exists in numbers close to 115,000 in the Mid-Atlantic region alone, is sufficient to determine that the job does indeed exist in the national economy. (R. 253)

## VI.

In the alternative to finding that the ALJ erred, Ramey requests that the court remand this matter under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence. Sentence six applies specifically to evidence not incorporated into the record by either the ALJ or the Appeals Council. The court may remand a case under sentence six to the Commissioner upon a showing of new, material evidence, and when good cause exists for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g); Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).

A reviewing court may remand a case to the Commissioner on the basis of newly discovered evidence only if the following four prerequisites are met: (1) the evidence must relate back to the time the application was first filed, and it must be new, not merely cumulative; (2) the

evidence must also be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her; (3) there must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant must present to the remanding court at least a general showing of the nature of the new evidence. Borders, 777 F.2d at 955; see also Wilkins v. Sec'y, Dep't Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).

Subsequent to the ALJ hearing, Ramey underwent exploration and tenosynovectomy of the right index finger. (R. 212-222) At his follow-up with Dr. Torre on August 3, 2005, Ramey reported that his pain was diminishing and that he was doing well. (R. 223) On November 1, 2005, Ramey returned with complaints of pain in his right hand. (R. 225) Dr. Torre could discover no post-operative problems, and he noted that Ramey had "markedly improved pain from [his] original preoperative status." (R. 225) Even so, Ramey was referred to pain management specialist, Dr. Bakhit. (R. 227) After an examination, Dr. Bakhit prescribed Lortab to manage Ramey's pain. (Pl. Ex. 1) The court finds that these records confirm that Ramey's condition is improving and that his pain can be ameliorated with medication. Accordingly, the court finds that these records would not have reasonably impacted the ALJ's disability determination and, thus, are not material and do not provide a basis for remand.

## VII.

Given the deferential standard of review under 42 U.S.C. § 405(g), the court must affirm the decision of the ALJ. The court finds that there is more than enough evidence to support the conclusion that Ramey was not disabled as defined under the Social Security Act. See Pierce v.

9

Underwood, 407 U.S. 552, 565 (1988); King v. Califano, 559 F.2d 597, 599 (4th Cir. 1979). As such, defendant's motion for summary judgment is granted.

In affirming the final decision of the Commissioner, the court does not suggest that Ramey is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the evidence in adjudicating Ramey's claims for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. An order dismissing this action will be entered.

The Clerk of Court is hereby directed to send a certified copy of this opinion to all counsel of record.

**ENTER:** This 14th day of December, 2006.

Michael F. Urbanski
United States Magistrate Judge

10